CITY OF BEACHWOOD, APPELLEE, *v.* COHEN, APPELLANT.

(No. 49760 — Decided
January 6, 1986.)

*Andrea Kanter Rubin,* for appellee.
*Clifton P. Jones,* for appellant.

PRYATEL, J. Zachariah Cohen, defendant-appellant, appeals his conviction for criminal trespass. Cohen was fined three hundred dollars plus costs and sentenced to ten days in jail plus one year of probation. One hundred fifty dollars of the fine and the ten-day sentence were suspended on the condition that there be no further similar convictions during the probation period and that defendant comply fully with the terms of probation.

In a bench trial, the following evidence was disclosed. Officer Dennis Nicklas, employed by the city of Beachwood Police Department, testified that on April 4, 1984, he was informed at roll call that a surveillance of the Menorah Park area had been set up in response to various complaints (lodged by Menorah Park female personnel) that a male suspect in a blue Cadillac was "harassing" employees. At approximately 8:05 p.m., Nicklas responded to a call of a suspicious vehicle at Menorah Park. He was met at the scene by Detective O'Donnell. The two officers identified themselves to Zachariah Cohen, defendant-appellant, who was apprehended seated in a light blue Cadillac parked in the employee parking lot at Menorah Park. When asked his purpose for being in the park-ing lot restricted to Menorah Park personnel, Cohen explained that he was waiting for an employee named Jackie. Cohen could not tell the officers what "Jackie's" last name was nor could he describe what Jackie looked like.

According to Officer Nicklas, Cohen initially denied being in the parking lot prior to April 4, 1984, but then admitted he had been there looking for Jackie on four or five previous occasions. Officer Nicklas further testified that on April 4, 1984, it was raining lightly outside.

Detective O'Donnell's testimony corroborated Officer Nicklas'. In addition, O'Donnell stated that the incidents involving the suspicious vehicle at Menorah Park had occurred around 8:00 p.m. When O'Donnell arrived at the scene on April 4, 1984, he testified, Cohen and the Cadillac which Cohen was driving fit the description of the previous complaints.

Susan Laskin, nursing supervisor at Menorah Park, testified that she phoned the police on April 4, 1984 after being informed by members of the nursing staff that a suspicious vehicle (spotted previously) was in the employee parking lot. Laskin looked out the window and observed a blue Cadillac "going slowly back and forth in the parking lot" (without its lights turned on) prior to parking. On cross-examination, Laskin admitted that it is permissible for drivers picking up employees to be in the "restricted" employee parking lot.

Howard Bram, chief executive officer of Menorah Park, testified that he signed the complaint against Cohen for criminal trespass. He further stated that a sign is posted in the employee parking lot indicating that parking in that area is limited to deliveries and to personnel. Although public access is restricted, Bram conceded that employees who are driven to and from work are permitted to be dropped off and picked up in the employee parking lot.

At the close of the city's case, defense counsel moved to dismiss the complaint. The motion was overruled.

The defense called Jackie Sparks as its first witness. Sparks testified that she was employed from August 1982 to April 2, 1984 as a waitress at R. H. Myers apartments, a complex related and located adjacent to Menorah Park. Sparks stated that Cohen picked her up from a bus stop on Cedar Road, near Menorah Park, one evening prior to April 4, 1984 (in the wintertime of 1984) when the weather was bad and drove her home. Cohen neither harassed nor propositioned her. Sparks further testified that she informed Cohen she worked at Menorah Park (although she did not specify which building). Cohen told Sparks that he lived in the area and would drive her home if he was near Menorah Park at 8:00 p.m. (the time Sparks finished her work shift). According to Sparks, Cohen had no way of knowing on April 4, 1984 she was no longer employed there.

The defendant took the stand in his own behalf and testified that his company (U.S. Molding Machine Co.) is located in Eastlake. That requires him, as a University Heights resident, to travel via Cedar Road past Menorah Park onto the thruway in the morning and in the opposite direction in the evening.

On April 4, 1984, on his way home from work, Cohen stopped at Menorah Park to pick up "Jackie," a woman he had offered to and did drive home (from a Cedar Road bus stop near Menorah Park) when the weather was bad. When Cohen asked two employees whether they knew Jackie, they responded negatively but pointed to a door where employees exit. The employees did not accuse Cohen of accosting them. Cohen said he was at Menorah Park on one other occasion: In the daytime, on March 29 or March 30, 1984, Cohen spoke with the manager of R. H. Myers apartments, inquiring about residency for his mother-in-law.

Cohen further testified that in March 1984, he purchased a sterling silver Cadillac. His company also owned a light blue Cadillac.

Defense counsel's renewal of his motion for acquittal was overruled.

The city introduced the rebuttal testimony of two nurses, Pauline Wright and Inell Sanford. Wright testified that in March 1984,[1] she had been approached by a man in the employee parking lot whom she identified as defendant. According to Wright, defendant was in a blue Cadillac with its lights turned off. As Wright approached the vehicle, the driver (Cohen) turned his lights on and asked Wright if she knew Jackie. Wright said "no" and Cohen said "something" to her about "sex." Wright saw Cohen again on April 4, 1984 (after the police arrived) sitting in the same vehicle as in March. Wright said Cohen's vehicle was parked next to her car.

Sanford, who did not work on April 4, 1984, identified Cohen as the man she was approached and propositioned by in February and March 1984.[2] According to Sanford, Cohen was in a grayish-blue Cadillac. Cohen flashed the lights on and off as Sanford approached the car and asked Sanford whether she knew Jackie.

On surrebuttal, Robert Luck, an employee of Cohen, testified that Cohen purchased a silver Cadillac in mid-March 1984. The blue Cadillac owned by Cohen's company then became the property of Luck.

Cohen filed the instant appeal, assigning four errors.

Assignment of Error No. I

"I. The trial court erred in striking a portion of the complaint as being

---

[1] No date was given.

[2] Again, no dates were given.

superfluous and thereby violated appellant's constitutional right to due process."

The complaint filed by Howard Bram, executive director of Menorah Park, charged that on April 4, 1984, at 8:05 p.m. Cohen "unlawfully without priveledge [*sic*] to do so knowingly enter[ed] or remain[ed] on the land of another [Menorah Park] or premise [*sic*] to wit: parked private vehicle on employee only access drive whereupon harassed employees * * * contrary to and in violation of Section 642.12A Codified Ordinances of the City of Beachwood * * *."

Toward the close of trial, the court struck the words "whereupon harassed employees" from the complaint as surplusage.

Appellant contends that a conviction was being sought for harassment and that the trial court, in deleting the words "whereupon harassed employees" from the complaint as surplusage, acted in contravention of Crim. R. 7(D) and consequently violated appellant's due process rights.

In contrast, appellee maintains that the actual charge was for criminal trespass; hence, the amendment of the complaint was in form, not substance, and consequently did not prejudice appellant.

Crim. R. 7(D) provides in pertinent part:

"The court may at any time before, during, or after a trial amend the * * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, *provided no change is made in the name or identity of the crime charged."* (Emphasis added.)

The threshold issue is whether the trial court's deletion of the words "whereupon harassed employees" constitutes a change "in the name or identity of the crime charged."

To resolve this issue, it is necessary to look at the face of the complaint. The complaint cites Beachwood Codified Ordinances Section 642.12(a) (criminal trespass), which states:

"(a) No person without privilege to do so, shall * * *

"(1) Knowingly enter or remain on the land or premises of another; * * *."

Since this section (criminal trespass) was referred to in the complaint as the pertinent law appellant was alleged to have violated, and since the complaint quotes the language of Section 642.12 (a)(1), appellant's contention that he was being charged with the crime of harassment is without merit. Although the complaint included language of harassment, the underlying charge remained criminal trespass. Nor are we persuaded by appellant's reliance on the decisions of *Lerch* v. *Sandusky* (1926), 23 Ohio App. 109; *Stirone* v. *United States* (1960), 361 U.S. 212; and *In re Oliver* (1948), 333 U.S. 257,[3] for the proposition that appellant was completely misled (and denied notice) as to the actual offense he had to defend against, particularly in light of the complaint's reference to Section 642.12(a).

Hence, we conclude that appellant was sufficiently apprised of the crime he was charged with — criminal trespass.

---

[3] Moreover, these cases are distinguishable from the instant case. In *Lerch, supra,* the affidavit charging defendant with disorderly conduct was found to be defective since it failed to specifically set forth the acts considered disorderly and did not follow the language of the ordinance. *Stirone, supra,* involves the situation where the defendant was tried improperly on charges not part of the indictment. Appellant cites *In re Oliver, supra,* for the proposition that an accused is entitled to a reasonable notice of the charge against him. However, in this case the complaint provided appellant with adequate notice that he was charged with criminal trespass, not harassment.

The deletion of the words "whereupon harassed employees" was within the court's power. Since the underlying charge of criminal trespass remained intact, no change was made "in the name or identity of the crime charged." (Crim. R. 7[D].)

Accordingly, appellant's first assignment of error is without merit.

### Assignment of Error No. II

"II. The trial court erred in not providing appellant the dates he was alleged to have been on Menorah Park property, thereby depriving him of the ability to rebut the evidence presented against him."

Appellant maintains that pursuant to Crim. R. 16(B)(1)(c) and (f),[4] the prosecutor was required to provide appellant with police reports that contain the dates appellant was allegedly seen on Menorah Park property. Absent these dates, appellant contends that his due process rights were violated since he was unable to refute the testimony of prosecution witnesses.

Since the city was pursuing a claim of trespass, the court should have struck the alleged testimony of harassment (in accordance with the court's deletion of harassment from the complaint). Nevertheless, the complaint charging appellant with criminal trespass refers only to the unlawful entry onto Menorah Park on April 4, 1984. Hence, all other dates and occurrences are irrelevant and subject to dismissal since the final charge pertained to trespass only. Consequently, the failure to provide appellant with these dates does not violate appellant's due process rights.

Moreover, Crim. R. 16(B)(2) specifies that the following information is not subject to discovery:

"Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of this case, or of statements made by witnesses or prospective witnesses to state agents."

This rule excepts police reports from discoverable materials. See *State v. Smith* (1976), 50 Ohio App. 2d 183 [4 O.O.3d 160].

Since appellant was made aware of the date he was charged with criminal trespass (April 4, 1984) and since the additional dates sought were reflected in non-discoverable documents or subject to defendant's motion to strike, we find that appellant's second assignment of error is without merit.

---

[4] These sections provide:

"(B) Disclosure of evidence by the prosecuting attorney.

"(1) Information subject to disclosure.

"* * *

"(c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant.

"* * *

"(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection."

Assignments of Error Nos. III and IV

"III. The trial court erred in finding that on April 4, 1984, appellant was guilty of criminal trespass.

"IV. The trial court erred in finding appellant guilty, in that the city failed to prove the elements of the crime charged."

These assignments of error will be treated together since they raise the single issue of whether the trial court erred in denying appellant's motion for acquittal.[5]

Appellant maintains that he was lawfully on the premises of Menorah Park on April 4, 1984, and that the prosecution offered no evidence to show that he (appellant) was without privilege to be on the property.

According to appellee, appellant did not establish he was on the premises for a legitimate purpose. In fact, appellee maintains that appellant "exceeded the scope of any privilege available to him *when it became evident that his purpose to remain on the premises of Menorah Park Nursing Home was unlawful.*" (Emphasis added.) To support its position appellee relies on the holding of *University Heights* v. *Conley* (1969), 20 Ohio Misc. 112 [49 O.O.2d 172], paragraph two of the syllabus, which states:

"One who enters upon the premises of another as an invitee or licensee becomes a trespasser *when it becomes evident that his purpose is to commit a criminal offense.*" (Emphasis added.)

The inherent flaw in appellee's position is that no evidence was adduced to show that appellant's purpose in being at Menorah Park on April 4, 1984 was to commit a criminal offense. Nor did the

city offer any evidence to prove that appellant was without privilege to be on the property. Appellant testified that he was parked in the employee's lot to drive an employee named Jackie home from work. Jackie admitted that she told appellant prior to April 4 that he could drive her home from Menorah Park if he was in the area at 8:00 p.m. She also stated that appellant had no way of knowing she stopped working there on April 2, 1984 — just two days before the incident, nor did she advise appellant in which building she worked at Menorah Park (*i.e.,* the R. H. Myers apartments). In addition, both Laskin (nursing supervisor) and Bram (executive director of Menorah Park) reinforced appellant's position that he was lawfully parked on the property when they testified that it is permissible for individuals driving employees to and from work to have access to the employee parking lot.

In *Cleveland Heights* v. *McMillan* (July 20, 1978), Cuyahoga App. No. 36812, unreported, we were faced with a similar situation. In *McMillan,* the police received a report of three males acting suspiciously in the vicinity of 2480 East Derbyshire. The police arrived at the scene and found one male seated in a truck, one male walking on the sidewalk, and defendant at the door of the building. Defendant told the police he was looking for an address where he was supposed to pick up some garbage for his friend (who testified he was a trash hauler). Defendant was convicted of attempted petty theft (for five hinge pins found missing from the apartment door) and for criminal trespass. On appeal, we reversed defendant's conviction based partially on the ground that the city

---

[5] Crim. R. 29(A) provides, in pertinent part:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.* * *"

failed to prove all the elements of the trespass charge. We stated at 4-5:

"The city also did not meet its burden of proof as to the trespass charge. Although there was evidence that appellant was on the property at 2480 E. Derbyshire, *there was no evidence whatsoever to show that he was there unlawfully*. His presence was as consistent with innocence as with guilt; and, therefore, all doubts should have been resolved in his favor. *State v. Kulig*, * * * [(1974), 37 Ohio St. 2d 157, 160]. Mere suspicion is not sufficient to sustain a criminal conviction. *State v. Winterich*, * * * [(1952), 157 Ohio St. 414, 423]." (Emphasis added.)

In the instant case, we conclude that the city of Beachwood introduced no evidence to show that appellant was without privilege to be on the property of Menorah Park on April 4, 1984, as required by Beachwood Codified Ordinances Section 642.12(a). Although evidence was presented to show that appellant may have unlawfully been on the premises of Menorah Park during the months of February and March, that evidence cannot be used to infer guilt as to April 4, 1984, since appellant's presence then was as consistent with innocence as with guilt. See *Kulig, supra; McMillan, supra.*

Since the city did not prove every element of the crime of criminal trespass, Assignments of Error Nos. III and IV are sustained and the judgment is reversed. Final judgment entered for appellant.

*Judgment reversed.*

JACKSON, J., concurs.

PARRINO, C.J., dissents.

PARRINO, C.J., dissenting. I respectfully dissent from the majority's determination of the third and fourth assignments of error. In all other respects, I concur.

It is undisputed that Menorah Park extends a privilege to non-employees to enter the employee parking lot for the purpose of picking up and dropping off employees. This privilege, however, was not intended to extend to persons who were sexually harassing female employees on Menorah Park property. Nursing supervisor Susan Laskin was instructed to call police by telephone upon seeing appellant's Cadillac. This indicates that Menorah Park no longer extended to appellant the privilege to enter the employee parking lot.

Appellant's automobile had been previously in the parking lot, and two nurses testified that they had been sexually propositioned by appellant in the parking lot prior to April 4, 1984. The trier of fact could have properly inferred from this evidence that appellant was without privilege to enter the Menorah Park parking lot and was therefore a trespasser. A careful review of the evidence convinces me beyond a reasonable doubt that appellant, at the time of his arrest, was indeed a trespasser.

For these reasons, I would affirm appellant's conviction.