JUDGMENT: AFFIRMED
{¶ 1} In the case at bar, Defendant-Appellant Joseph Thomas (aka Abdullah Yusuf), appeals from an order of the Cuyahoga County Court of Common Pleas ("the trial court") denying his motion for postconviction relief filed pursuant to R.C.2953.21. For the reasons set forth below, we affirm.
 {¶ 2} The proceedings below originate from Thomas's underlying criminal convictions for robbery, failure to comply with an order of a police officer, escape, obstruction of official business and receiving stolen property. This court has once detailed the underlying factual background of this case in State v. Thomas, Cuyahoga App. No. 84728,2005-Ohio-1840, ("State v. Thomas I") as follows:
 On August 4, 2003, defendant was indicted pursuant to a five-count indictment in connection with the theft of a vehicle belonging to Denise Drenski. In Count One, defendant was charged with aggravated robbery with a notice of prior conviction and a repeat violent offender specification. In Count Two, defendant was charged with failure to comply with the order of a police officer. Counts Three and Four charged him with escape and obstructing official business, respectively, and Count Five charged him with receiving stolen property. Defendant pled not guilty and the matter proceeded to a jury trial on December 8, 2003. As trial commenced the state amended the aggravated robbery charge to robbery and the court permitted the defense to bifurcate the specifications.
 Denise Drenski testified that, at approximately 8:30 a.m. on June 25, 2003, she stopped at a pay phone at West 117th Street and Weston to call her boyfriend and let him know that she was on her way to his apartment. As she stood at the pay phone, defendant approached from the rear, struck her in the area of her lower neck and upper back. Drenski fell to the ground, striking her knee. Defendant got into her vehicle and looked directly at Drenski as he fled. Drenski stated that she clearly observed defendant, and noticed that he was wearing a green shirt and baseball cap.
 Drenski further testified that she called police from the pay phone and described her assailant, the car, and the direction in which he fled. She then walked the remainder of the distance to her boyfriend's house. Approximately twenty minutes later, the police informed her that they stopped a man driving her car in the area of West 76th Street and Colgate. Drenski went to the area and identified defendant as her assailant. According to Drenski, defendant was wearing the same clothing she had observed earlier and she was positive that he was the attacker.
 The police officers at the scene recovered Drenski's credit cards from defendant's pocket, but other items were missing from the car, including Drenski's portable DVD player, purse, cell phone and wallet.
 On cross-examination, Drenski admitted that she did not go to the hospital for her injuries.
 Cleveland Police Officer Annette Godfrey testified that she responded to a radio broadcast concerning the incident. According to Godfrey, Drenski was upset and crying but provided a description of the assailant, including his clothing.
 Cleveland Police Officer Donald Wellinger testified that he also spoke with Drenski and obtained a description of her car and its license plate number. At approximately 9:20 a.m., he observed the car proceeding northbound on West 65th Street. He activated his overhead lights and siren to stop the vehicle. The driver sped up, however, driving through stop signs and traffic lights. Wellinger and his partner continued to follow the vehicle until it ultimately crashed into a pole at West 76th Street and Elton. Drenski identified the driver as her assailant, and the officers then took him to the hospital. At this time, his hands were cuffed behind his back. Later, as they proceeded to the Justice Center, Wellinger noted that defendant was now handcuffed with his hands in the front of his body. As Wellinger opened the car door for defendant, he fled. The officers apprehended him in the parking lot of the Justice Center. Later during booking, defendant gave the officer incorrect names and dates of birth.
 Cleveland Police Officer Albert Scott also testified that defendant did not stop when the officers activated their lights and siren, and also stated that he had difficulty handcuffing defendant because defendant continued to be uncooperative. As Scott struggled with defendant, Drenski's credit cards fell to the ground. Scott also testified that, after he read defendant his rights, defendant stated that he had taken the car because he did not have bus fare.
 Defendant was subsequently convicted of all charges and sentenced to a total of eleven years.
Id. at p. 2, ¶ 10.
 {¶ 3} In State v. Thomas I, this court reversed Thomas's conviction for receiving stolen property, finding that this count, which the state proved by establishing that Thomas stole certain items of personal property from the victim's car, was not separately punishable apart from the robbery count. Id. at 29. We affirmed the judgment in all other respects and remanded the case for resentencing. Id. The trial court subsequently re-imposed a sentence of eleven years imprisonment.
 {¶ 4} On September 14, 2004, Thomas filed a pro se "Petition to Vacate or Set Aside Judgment Conviction or Sentence," in which he argued that the state prejudicially failed to disclose a statement made by the victim that was contained in the police report of his crime. In relevant part, he asserted that, while the victim testified at trial that she sustained injury in the form of upper back or neck soreness and a scrape on her hand or knee as a result of Thomas violently pushing her to the ground to gain access to her car, she told an interviewing police officer that she was not injured as a result of his actions. As such, Thomas asserted that this exculpatory or impeaching police report narrative account would have been used by defense counsel to discredit the victim's testimony and the jury would have necessarily come back with a "not guilty" verdict on the robbery count. The trial court denied the motion without a hearing or opinion. The merits of this motion are the subject of this appeal.
 {¶ 5} Thomas then appealed that decision to this court, and we dismissed it on September 15, 2005, finding that the trial court was statutorily required to issue findings of fact and conclusions of law in disposing of the motion. See R.C. 2953.21(C) and (G); State v.Thomas, Cuyahoga App. No. 85375, 2005-Ohio-4830 ("State v. ThomasII"). Since the trial court did not, this court had no final appealable order to review. Id. Thomas then filed an application in this court for a writ of mandamus to compel the trial court to issue the required findings of fact and conclusions of law, and the trial court did file appropriate findings of fact and conclusions of law on January 4, 2006. See State v. Thomas, Cuyahoga App. No. 87311, 2006-Ohio-690 ("State v.Thomas III"). Thomas then filed the instant appeal on January 20, 2006. This court subsequently dismissed Thomas's application for a writ of mandamus on February 15, 2006. See State v. Thomas III.
 {¶ 6} Here, Thomas appeals the trial court's dismissal of his September 14, 2004, motion for postconviction relief. Because the trial court ultimately did issue findings of fact and conclusions of law, we may now decide the merits of Thomas's assigned errors. He asserts three assignments of error, which we review in order.
 {¶ 7} First, we find it useful to describe the nature of the right to postconviction relief in some detail. R.C. 2953.21(A) states, in part, as follows:
 (1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution [**6] of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.
 {¶ 8} A postconviction proceeding is a collateral civil attack on a criminal conviction. State v. Calhoun (1999), 86 Ohio St.3d 279, 281,1999-Ohio-102, 714 N.E.2d 905. In order to obtain postconviction relief, a petitioner must show that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States [.]" R.C.2953.21; State v. Watson (1998), 126 Ohio App.3d 316, 323,710 N.E.2d 340. Under R.C. 2953.21, a petitioner seeking postconviction relief is not automatically entitled to an evidentiary hearing. Calhoun,86 Ohio St.3d at 282, 714 N.E.2d 905. Significantly, the Ohio Supreme Court has held that proper basis for dismissing a petition for postconviction relief without holding an evidentiary hearing include: 1) the failure of the petitioner to set forth sufficient operative facts to establish substantive grounds for relief, and 2) the operation of res judicata to bar the constitutional claims raised in the petition. Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; State v. Lentz (1994),70 Ohio St.3d 527, 530, 1994-Ohio-532, 639 N.E.2d 784. In determining whether a hearing is required, the Ohio Supreme Court in State v. Jackson (1980),64 Ohio St.2d 107, 413 N.E.2d 819, stated the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case.
 {¶ 9} As the Supreme Court further explained in Jackson, supra, "broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction relief petitions." Id. at 111. Rather, a petitioner must submit evidentiary documents containing sufficient operative facts to support his claim before an evidentiary hearing will be granted. Accordingly, "a trial court properly denies a defendant's petition for post-conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." Calhoun, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).
 {¶ 10} In State v. Phillips, Summit App. No. 20692, 2002-Ohio-823, the court noted,
 Significantly, evidence outside the record alone will not guarantee the right to an evidentiary hearing. State v. Combs (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205. Such evidence "'must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of [State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'" (Citation omitted.) State v. Lawson (1995), 103 Ohio App.3d 307, 315, 659 N.E.2d 362. Thus, the evidence must not be merely cumulative of or alternative to evidence presented at trial. Combs, 100 Ohio App.3d at 98, 652 N.E.2d 205.
Id.
 {¶ 11} With these principles in mind, we turn to Thomas's assignments of error. ASSIGNMENT OF ERROR I: THE TRIAL COURT ABUSED ITS DISCRETION BY ISSUING THE PROSECUTOR'S PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW, AND GROSSLY FAILED TO PROVIDE ADEQUATE CONSIDERATION OF PETITIONER'S CLAIMS WITHIN HIS POSTCONVICTION RELIEF PETITION.
 {¶ 12} In his First Assignment of Error appellant maintains that the trial court erred when it relied upon, and adopted, the proposed findings of fact and conclusions of law prepared by the state. We disagree.
 {¶ 13} Civ.R. 52 states that it is within the trial court's "discretion" to "require any or all of the parties to submit proposed findings of fact and conclusions of law."
 {¶ 14} In Anderson v. City of Bessemer (1985), 470 U.S. 564,105 S.Ct. 1504, 84 L.Ed.2d 518, the United States Supreme Court noted:
 [W]e, too, have criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record. See, e.g., United States v. El Paso Natural Gas Co., 376 U.S. 651, 656-657, 84 S.Ct. 1044, 1047-1048, 12 L.Ed.2d 12 (1964); United States v. Marine Bancorporation, 418 U.S. 602, 615, n. 13, 94 S.Ct. 2856, 2866, n. 13, 41 L.Ed.2d 978
(1974). We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor. See J. Wright, The Nonjury Trial — Preparing Findings of Fact, Conclusions of Law, and Opinions, Seminars for Newly Appointed United States District Judges 159, 166 (1962). Nonetheless, previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. United States v. Marine Bancorporation, supra, at 615, n. 13, 94 S.Ct., at 2866, n. 13; United States v. El Paso Natural Gas Co., supra, 376 U.S., at 656-657, 84 S.Ct., at 1047-1048.
Id. at 572, 105 S.Ct. at 1510-11.
 {¶ 15} Ohio appellate courts have likewise held that this procedure is not prohibited. State v. Stillman, Fairfield App. No. 2005-CA-55,2005-Ohio-6299; State v. Erwin, (Apr. 8, 1998), Licking App. No. 97-CA-32. In the absence of demonstrated prejudice, it is not erroneous for the trial court to adopt, in verbatim form, findings of fact and conclusions of law which are submitted by the state. State v.Powell (1993), 90 Ohio App.3d 260, 263, 629 N.E.2d 13; State v.Sowell (1991), 73 Ohio App.3d 672, 676, 598 N.E.2d 136; State v.Peek (Apr. 18, 1996), Cuyahoga App. No. 69546. A trial court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law. State v. Jester, Cuyahoga App. No. 83520, 2004-Ohio-3611; State v. Combs (1994), 100 Ohio App.3d 90, 110,652 N.E.2d 205. "Thus, a trial court's use of the state's findings of fact and conclusions of law alone fails to `deprive [a] defendant of meaningful review of his petition for postconviction relief, and does not constitute error in the absence of demonstrated prejudice.'"State v. Powell (1993), 90 Ohio App.3d 260, 629 N.E.2d 13, paragraph one of the syllabus, jurisdictional motion overruled, (1994),68 Ohio St.3d 1436.
 {¶ 16} Ultimately, the reason for providing findings of fact and conclusions of law is to inform the petitioner of the trial court's rationale for its decision and to expedite proper appellate review.State ex rel. Carrion v. Harris (1988), 40 Ohio St.3d 19,530 N.E.2d 1330. In the case at bar, we find no evidence that the trial court did not review and consider the petition in its entirety. Therefore, Thomas has demonstrated no prejudice from the trial court's adoption of the proposed findings of fact and conclusions of law submitted by the state. The court's findings of fact and conclusions of law adequately apprised him and this court of the basis for the denial of the claims for relief advanced in the petition. See State v. Sowell, supra.
 {¶ 17} We therefore overrule Thomas's first assignment of error.
 ASSIGNMENT OF ERROR II: THE TRIAL COURT ABUSED ITS DISCRETION BY DENIAL OF DEFENDANT PETITIONER'S PETITION FOR POST-CONVICTION RELIEF IN WHERE [SIC] PETITIONER DEMONSTRATED EVIDENTIARY DOCUMENTATION, TO WIT, THE POLICE REPORT WHICH CONTAINS SUFFICIENT OPERATIVE FACTS TO WARRANT A HEARING.
 ASSIGNMENT OF ERROR III: THE TRIAL COURT FAILED TO PROTECT DEFENDANT-PETITIONER'S SUBSTANTIVE CONSTITUTIONAL RIGHTS, BY DENIAL OF PETITION, WHERE PETITIONER APPENDED DOCUMENTARY EVIDENCE TO THE PETITION THAT DEMONSTRATED GOVERNMENTAL MISCONDUCT PURSUANT TO BRADY V. MARYLAND (1963), 373 U.S. [83].
Because these two assignments of error discuss similar issues, we resolve them together.
 {¶ 18} "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.Ed.2d 215. "The evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley (1985),473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481. Both exculpatory and impeachment evidence fall within the Brady rule. Bagley,473 U.S. at 676, 105 S.Ct. at 3380, citing Giglio v. United States (1972),405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104. Therefore, we must consider whether the police report proffered by Thomas was material either to his guilt or punishment. In this context, materiality is a question which we review de novo. State v. Hesson (1996), 110 Ohio App.3d 845, 851,675 N.E.2d 532.
 In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. (United States v. Bagley [1985], 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, followed.)
Id. at 852, quoting State v. Johnston (1988), 39 Ohio St.3d 48,529 N.E.2d 898 at paragraphs four and five of the syllabus. See, also,State v. Jackson (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549.
 {¶ 19} Thomas bears the burden of proving that the state suppressed material exculpatory evidence. State v. Jackson (1991),57 Ohio St.3d 29, 33, 565 N.E.2d 549, citing Talamante v. Romero (C.A.10, 1980),620 F.2d 784; Monroe v. Blackburn (C.A.5, 1979), 607 F.2d 148. See, also,State v. Wickline (1990), 50 Ohio St.3d 114, 117, 552 N.E.2d 913.
 {¶ 20} Generally, Crim.R. 16(B)(2) exempts police reports from discovery. See, State v. Moore (1991), 74 Ohio App.3d 334, 340,598 N.E.2d 1224, citing State v. Workman (1984), 14 Ohio App.3d 385,14 Ohio B. 490, 471 N.E.2d 853; State v. Cummings (1985), 23 Ohio App.3d 40,23 Ohio B. 84, 491 N.E.2d 354; Beachwood v. Cohen (1986),29 Ohio App.3d 226, 29 Ohio B. 272, 504 N.E.2d 1186. Under Crim.R. 16(B)(1)(g), however, after a witness's direct examination, opposing counsel may request an in camera inspection of the witness's "written or recorded statement" to determine whether it is inconsistent with his testimony. "'Statement' includes police reports to the extent they contain the [witness's] observations and recollections, but not `portions which recite matters beyond the witness' personal observations.' State v.Jenkins (1984), 15 Ohio St.3d 164, 225, 473 N.E.2d 264, 316." State v.Keenan (1998), 81 Ohio St.3d 133, 147, 689 N.E.2d 929.
 {¶ 21} The police report contains the following summary of a statement the victim gave to an interviewing police officer:
 Victim states while using a pay telephone on W. 117th and Western Ave. an unknown black male car jacked her vehicle.
 Further information reveals victim standing inside the drivers [sic] door using the phone when an unknown black male grabbed her and violently pushed her to the ground.
 This unknown male jumped in the vehicle and headed [eastbound] on Western Ave. Victim's baby pink Tommy purse w/ contents inside vehicle along with personal items. Vehicle info 1997 Saturn SL2, blk, 4d, lic # APB4260.
 {¶ 22} All channel broadcast made. Toured area[. V]ictim refused EMS.
 {¶ 23} Thomas contends that this statement, which we note is an unsigned summary of the victim's statement as recorded by a police officer, establishes three main points of fact different from the testimony the victim gave at trial: that the victim sustained no injury when her assailant forced her out of the doorway of the car she was standing outside of as she used a pay telephone; that she was "grabbed" away from her car by her assailant, instead of being punched in the back, as she testified at trial; and, that she was not the record owner of the car she was driving and was taken from her. Thomas argues that if the state would have disclosed the police report to his defense attorney, the attorney would have used the alleged discrepancies to discredit the victims testimony, and Thomas would have been acquitted on the robbery count.
 {¶ 24} As to the first two claimed discrepancies, we observe that the information contained in the police report does not conflict with the victim's trial testimony, it merely would call for the detail or clarification that Thomas's defense counsel ably elicited. The police report statement only reflects that the victim refused treatment by EMS personnel — it does not indicate that the victim sustained no injury when Thomas attacked her. Indeed, a review of her trial testimony confirms that, both in the victim's testimony on direct examination and in a thorough cross-examination by defense counsel, she explained that she did not sustain an injury that required treatment by medical personnel, but that Thomas left her with a small scrape on her hand and knee, and soreness in her upper middle back or neck area, where he applied the force to cause her to fall away from her car so he could steal it. Any argument to the contrary is foreclosed by this court's ruling that Thomas did injure the victim in performing his car-jacking. See State v. Thomas I ("In this matter, [the victim] testified that [Thomas] struck her in the lower neck/ upper back area, which caused a type of "whiplash" injury, and that when she fell, she scraped her knee and hit her hand. We find this sufficient to constitute physical harm.")
 {¶ 25} To any extent that Thomas may allege that the state needed to establish that he seriously injured the victim in order to prove the crime of robbery, he is incorrect. True, R.C. 2911.01(A)(3), the statute under which the state indicted Thomas, defines the crime of robbery, a felony of the first degree, as follows:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 * * *
 (3) Inflict, or attempt to inflict, serious physical harm on another.
However, immediately prior to trial, the trial court granted the state's unopposed motion to amend this count to charge the crime of robbery, a felony of the second degree, and defined in R.C. 2911.02(A)(2) as follows:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 * * *
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 * * *.
The jury convicted Thomas under this robbery charge, implying that the jurors credited the victim's testimony that she sustained some injury when Thomas forced her away from her car. As such, any distinction between injury and injury necessitating medical attention was addressed by defense counsel's questioning of the victim, and was fundamentally irrelevant.
 {¶ 26} Similarly, the specific manner in which the victim was compelled away from the car stolen from her is irrelevant. The operative fact established at trial, and which was not controverted, was that Thomas forcibly compelled the victim away from her car so he could enter it. Parsing distinctions as to terminology as to whether Thomas "grabbed her and violently pushed her to the ground," as the report summary reads; or, pushed/punched her from behind, as her testimony states, is not useful or important, and any alleged difference between the descriptions of force used in the police report or trial testimony can provide Thomas with no grounds for relief.
 {¶ 27} Finally, Thomas alleges that the police report reveals that the victim was not the titled owner of the car she possessed when he stole it from her. He contends this information somehow prejudicially conflicts with the victim's testimony that the car Thomas stole from her was "her" car. We see no meaningful distinction.
 {¶ 28} According to R.C. 2913.01(D), in relevant part, for the purposes of Ohio's prohibition of theft-oriented crimes, an "owner" of property is "* * * any person, other than the [thief], who is the owner of, who has possession or control of, or who has any license or interest in property or services * * *." Moreover, in State v. Shoemaker (1917), 96 Ohio St. 570, 572, the Ohio Supreme Court addressed a similar question which involved the theft of an automobile from a bailee. The court stated that "[t]he gist of the offense was not the particular ownership of the property, but the wrongful taking. If the taking was wrongful, it did not matter who owned the property in question." See State v.Ervin (June 11, 1987), Cuyahoga App. No. 52357; see, also, State v.Ayers (1966), 6 Ohio App.2d 103.
 {¶ 29} Accordingly, even if we were to read the police report statement and the victim's trial testimony to conflict, which we do not, such conflict would entitle Thomas to no relief.
 {¶ 30} In summary, we hold that Thomas has demonstrated no substantive grounds for relief, * * *, i.e., that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A). See State v. Calhoun 86 Ohio St.3d 279,714 N.E.2d 905. Accordingly, Thomas's second and third assignments of error have no merit, and the trial court correctly determined that he was entitled neither to a hearing on the merits of his motion for postconviction relief, nor to any relief on the motion.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOSEPH J. NAHRA, JUDGE* SEAN C. GALLAGHER, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR
* (SITTING BY ASSIGNMENT: JOSEPH J. NAHRA, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.)