**[Cite as *State v. Evenson*, 2023-Ohio-4196.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220618 |
|  |  | TRIAL NO. B-2000734 |
| Plaintiff-Appellee, | : |  |
| vs. |  |  |
|  | : |  |
| TROY EVENSON, |  | *O P I N I O N.* |
|  | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 22, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Jackson Law Office, LLC,* and *Kory A. Jackson,* for Defendant-Appellant.

**Bock, Judge.**

{¶1}   Defendant-appellant Troy Evenson accepted an insurance payout for his stolen motorcycle. But when the motorcycle was found, Evenson kept both the money and the motorcycle. He was subsequently arrested and convicted of theft and unauthorized use of a motorcycle.

{¶2}   In two assignments of error, Evenson challenges his convictions. Evenson maintains that he was the motorcycle's rightful owner, with the title in his name at all times relevant to this case. He argues that a person cannot steal something he already owns. But we disagree that Evenson was the motorcycle's rightful owner because Evenson had transferred his ownership of the motorcycle when he assigned the vehicle title to the insurance agency.

{¶3}   Evenson also argues that the trial court should have excluded a notarized power of attorney to sanction a discovery violation. But he received an unnotarized version of the power of attorney, and the trial court reasonably concluded that he suffered no surprise or prejudice. Therefore, we affirm his convictions.

## I. Facts and Procedure

{¶4}   In late 2017, Evenson's 2011 Harley Davidson motorcycle was stolen from a friend's driveway. He reported the theft to the Reading Police Department and filed a claim with his insurer, Cincinnati Insurance Company ("CIC"). At the time, the motorcycle was titled in Evenson's name. After some negotiation with CIC, Evenson received a $16,180.42 payout to cover his loss.

{¶5}   Fast forward to 2019 when the Reading Police Department received a call from Indiana law enforcement. The motorcycle had been recovered and impounded in Indiana. In turn, the Reading police contacted Evenson, who recovered the motorcycle from Indiana and transported it to his home in Cincinnati. Evenson

2

stored the motorcycle at his home for about one month before news of the motorcycle's recovery made its way to CIC. With the help of police, CIC recovered the motorcycle. Police charged Evenson with theft in violation of R.C. 2913.02(A)(1) and unauthorized use in violation of R.C. 2913.04(A).

### *The Jury Found Evenson Guilty of Both Offenses*

{¶6}    At trial, the state's case against Evenson consisted of testimony, Evenson's 2017 police report, insurance paperwork, towing and impound documents, and photographs of the motorcycle.

{¶7}    Chad Conrad was an investigator for CIC and described the company's handling of Evenson's insurance claim. After Evenson gave a statement to the CIC claims department, and some negotiation, Evenson accepted a settlement check for $16,180.42. According to Conrad, CIC issues a settlement check in these instances only when the insured:

> [S]ign[s] a sworn proof of loss. We also have all these documents that need to be notarized. But this one proof of loss indicates acknowledgement of the settlement of the claim and how much they are getting. We also have the title transferred over to us, signed and notarized, along with the power of attorney, signed and notarized. And that assists with the transferring of the title to us once the claim is settled.

{¶8}    Conrad acknowledged that CIC did not transfer the title of the motorcycle into its name until October 2019, after the motorcycle had been recovered and returned to Evenson. The state entered into the evidence the signed-and-notarized "Assignment of Ownership" on the back of the motorcycle's title in Evenson's name. That assignment, dated September 12, 2018, identified Evenson as

the "transferor/seller" and CIC as the "transferee/buyer."

{¶9} Evenson objected to the admission of several of those insurance documents. Specifically, he objected to exhibit 8, "a photocopy of [the] title, along with the two unnotarized power of attorney assignments, along with an unnotarized sworn statement, proof of loss." In response, the state withdrew the unnotarized documents. He also objected to the admission of exhibit 9, a notarized statement of loss, and exhibit 18, a notarized power-of-attorney form. The trial court overruled those objections and admitted those documents into evidence.

{¶10} Rachel Grein, a Reading Police Department dispatcher, testified that the Reading Police Department had received a letter from CIC in September 2018, explaining that CIC "paid a theft loss to our insured, Troy Evenson" and "acquired the rights of recovery of our insured for the following property." But the Reading Police Department failed to update the incident report. When it learned that the motorcycle had been discovered in Indiana, the Reading Police Department relied on the information in the incident report and contacted Evenson instead of CIC.

{¶11} Conrad testified that the Reading Police Department failed to contact CIC when it learned that the motorcycle had been recovered. Likewise, Evenson failed to notify CIC. Rather, CIC learned in August 2019 that the motorcycle had been recovered. CIC contacted Evenson later that month and the two agreed that Evenson would return the motorcycle to CIC by September 5, 2019. But when the motorcycle arrived at CIC's office, it was "stripped of its parts" and inoperable:

> There was just a rod sticking through the front wheel and the front fork
>
> holding it together, which would not allow it to be driven. The starter
>
> was removed. A maintenance -- a gentleman in our office noticed the
>
> gas tank was for a carbureted engine and the engine was fuel injection.

4

There was [sic] no brake lines, no brakes, nothing. It was missing very many parts.

**{¶12}** Decatur County Deputy Sheriff Patrick Graue described the recovery of the motorcycle in Indiana in July 2019. According to Graue, the motorcycle was operable and in "good condition" at the time of its recovery.

**{¶13}** Evenson moved for an acquittal under Crim.R. 29, which was denied. The jury found Evenson guilty of theft and unauthorized use of property. Evenson received two years of community control, two years of probation, and an order to pay restitution. Evenson challenges his convictions in two assignments of error.

## II.  Law and Analysis

### *Evenson Transferred Ownership of the Motorcycle*

**{¶14}** Evenson's first assignment of error asserts that the trial court erred when it overruled his motion for an acquittal. "The standard of review for the denial of a Crim.R. 29(A) motion is the same standard for a challenge to the sufficiency of the evidence." *State v. Pope*, 1st Dist. Hamilton No. C-180587, 2019-Ohio-3599, ¶ 3, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. Acquittal is improper if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at ¶ 4, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶15}** Evenson was charged with theft under R.C. 2913.02(A)(1), which provides, "No person, with purpose to deprive the owner of property or services shall, knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent." He was also charged with unauthorized use of the motorcycle under R.C. 2913.03(A), which states, "No

person shall knowingly use or operate a[] * * * motorcycle[] * * * without the consent of the owner or authorized person to give consent." For both offenses, the only element in dispute is whether CIC was the motorcycle's "owner."

{¶16}  It is well established that, for theft-oriented offenses, "[t]he gist * * * [i]s not the particular ownership of the property, but the 'wrongful' taking. If the taking was wrongful, it did not matter who owned the property in question." *State v. Shoemaker*, 96 Ohio St. 570, 572, 117 N.E. 958 (1917).

{¶17}  Evenson argues that he was the rightful owner of the motorcycle both when he retrieved the motorcycle from Indiana and when he held it on his property. His principal theory, and the one rejected by the trial court, is that in theft cases like his, the vehicle's title serves as absolute proof of a vehicle's ownership under the Ohio Certificate of Motor Vehicle Title Law, R.C. 4505.04. That statute provides:

> No person acquiring a motor vehicle from its owner * * * shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

R.C. 4505.04(A).

**{¶18}** Evenson cites caselaw from the Ohio Supreme Court and this court holding that "ownership of a motor vehicle in Ohio does not change upon delivery of an assigned certificate of title. The certificate of title must be issued in the name of the new owner to have change in ownership of the vehicle." *Tajeddin v. Grange Mut. Cas. Co.*, 1st Dist. Hamilton No. C-860519, 1987 Ohio App. LEXIS 8046, 4 (July 29, 1987), citing *Brewer v. DeCant*, 167 Ohio St. 411, 149 N.E.2d 166 (1958).

**{¶19}** But this argument does not help Evenson. As we recognized in *Tajeddin*, and the state argues, ownership in theft cases is governed by R.C. 2913.01(D). *Id.* at 4-5, citing *State v. Rhodes*, 2 Ohio St.3d 74, 442 N.E.2d 1299 (1982). Under that statute, the "owner" for theft-oriented offenses is "any person other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in the property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D).

**{¶20}** In *Rhodes,* the Ohio Supreme Court explained that "[f]or purposes of determining the commission of a theft offense under R.C. 2913.01, one need not hold a certificate of title to be in lawful possession of a motor vehicle." *Rhodes* at 76. Thus, "it is unnecessary to prove 'title ownership in a specific person other than the defendant.'" *State v. Grayson*, 11th Dist. Lake No. 2006-L-153, 2007-Ohio-1772, ¶ 26, quoting *Rhodes* at 76. Rather, the state's evidence must "prove that a defendant deprived someone of property who had 'possessed or control of, or any license or *any interest* in' that property." (Emphasis added.) *Rhodes* at 76. "[T]he gist of a theft offense is the wrongful taking by the defendant, not the particular ownership of the property." *State v. Jones*, 8th Dist. Cuyahoga No. 92921, 2010-Ohio-902, ¶ 12, citing *State v. Thomas*, 8th Dist. Cuyahoga No. 87666, 2006-Ohio-6588.

7

{¶21} Consider *State v. Plata*, 12th Dist. Warren No. CA2013-05-049, 2014-Ohio-449, where the Twelfth District affirmed a title holder's conviction for theft of a car. In *Plata*, there was significant evidence that Adrian Plata sold Michael Hodge a Mazda for $1,450 and handed Hodge an unnotarized signed copy of the vehicle's title along with a set of keys. *Id.* at ¶ 22. The Mazda was inoperable, so Hodge left it at Plata's house "until the necessary repairs could be completed." *Id.* at ¶ 4. Once repaired, Hodge "planned to have the title notarized." *Id.* But when Hodge returned the following week to retrieve the Mazda, the car had disappeared. *Id.* at ¶ 6. To make matters worse, Hodge learned that a duplicate title had been issued, nullifying the signed title in his possession. *Id.*

{¶22} Like Evenson, Plata cited R.C. 4505.04 to argue that "he was the owner of the vehicle, and as the owner, he could not be convicted of stealing 'his own car.'" *Id.* at ¶ 19. The *Plata* court rejected that proposition, because "title ownership in a specific person other than the defendant is not an element of a theft offense." *Id.* at ¶ 20, citing *State v. Blank*, 12th Dist. Clermont No. CA96-01-004, 1996 Ohio App. LEXIS 3357, 2 (Aug. 12, 1996). Consequently, the *Plata* court found that the jury could have concluded that "Hodge became the owner of the Mazda and appellant no longer had a lawful right to possession of the vehicle" when Hodge paid Plata in exchange for the keys and signed title. *Id.* at ¶ 22.

{¶23} With these principles in mind, the evidence shows that CIC issued Evenson a check for $16,180.42 in September 2018. The next day, Evenson signed a proof-of-loss statement, acknowledging his acceptance of the $16,180.42 check in exchange for the transfer of his rights, title, and interest in the motorcycle upon payment. Plus, he signed the assignment-of-ownership form on the reverse side of the title, designating himself as the transferor/seller and CIC as the transferee/buyer. He

also signed a power-of-attorney form, granting CIC power of attorney and confirming the receipt of consideration for the motorcycle.

{¶24} When viewed in a light most favorable to the state, a rational fact finder could have found that CIC was the owner of the motorcycle under R.C. 2913.01(D). The trial court appropriately denied Evenson's motion for an acquittal under Crim.R. 29(A). We overrule Evenson's first assignment of error.

### *The Trial Court Reasonably Admitted the Notarized Power of Attorney*

{¶25} In his second assignment of error, Evenson disputes the admission of two exhibits at trial. First, he argues that the state failed to disclose the existence of a notarized power-of-attorney form signed by Evenson, which constitutes a discovery violation under Crim.R. 16. Evenson acknowledges that he received an unnotarized copy of the power of attorney but insists that the trial court should have excluded the notarized copy as a sanction under Crim.R. 16.

{¶26} When a party violates its discovery obligations, the trial court may, in its discretion, issue a sanction under Crim.R. 16(L). *State v. Williams*, 1st Dist. Hamilton Nos. C-160196 and C-160197, 2016-Ohio-8123, ¶ 11, citing *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33. We review the trial court's decision for an abuse of discretion. *Darmond* at ¶ 34.

{¶27} But before the trial court can sanction a discovery violation, it "must inquire into the circumstances of the alleged violation of Crim.R. 16." *Id.* at ¶ 27. The trial court must consider " '(1) whether the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the evidence would have benefited the accused, and (3) whether the accused was prejudiced.' " *State v. Pittman*, 1st Dist. Hamilton No. C-220460, 2023-Ohio-1990, ¶ 14, quoting *Darmond* at ¶ 34, citing *State v. Parson,* 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), syllabus.

**{¶28}** Following that inquiry, a trial court "must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Darmond* at ¶ 21, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus. Sanctions are mechanisms to " ' "remove the element of gamesmanship from a trial" ' " and " 'prevent surprise and the secreting of evidence favorable to one party.' " *Darmond* at ¶ 19, quoting *Lakewood* at 3, quoting *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). When sanctioning a discovery violation, "the court may order [the violating] party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L).

**{¶29}** Here, the trial court inquired into the nature of the discovery violation. At issue is the notarized power-of-attorney form signed by Evenson. Evenson received an unnotarized copy of the power of attorney before his trial. At trial, Conrad "pulled [the document] out of his file when he was testifying." Evenson's counsel acknowledged that the state "probably didn't know." Further discussion revealed that Evenson had received two additional unnotarized insurance documents, including unnotarized copies of the title's assignment-of-ownership form and his sworn statement of loss. But unlike the power of attorney, Evenson received notarized copies of the title's assignment of ownership and Evenson's sworn statement of loss.

**{¶30}** Evenson argues that admitting the notarized power of attorney into the evidence constituted unfair surprise and was prejudicial to his position at trial. When the trial court admitted the notarized power of attorney, it explained:

if this document raised an issue or defense or something else – it was totally a surprise to your client or you, I would be inclined to exclude it.

10

This document essentially is the heart of the case and it's what we've been talking about for three days. It's what the indictment has been talking about for two years. Consequently, I can't see that it comes as much of a surprise, because it doesn't do anything other than – actually, it's kind of, gilding the lily, so to speak, of the title itself.

**{¶31}** After the state informed the trial court that the power of attorney, title assignment, and sworn statement of loss were "all executed at the same time," the trial court concluded that the notarized power of attorney "is of no prejudice to [Evenson]."

**{¶32}** While Evenson argues that the power of attorney relates "directly to the issue of ownership of the motorcycle," and that the unnotarized copy was inadmissible for lack of authentication, he overlooks other evidence in the record establishing the transfer of his ownership interest to CIC. Specifically, the notarized sworn statement of loss and assignment of ownership also revealed that Evenson had transferred ownership of the motorcycle to CIC. He received those documents and the unnotarized power of attorney in discovery. The trial court reasonably found that admitting the notarized power of attorney did not prejudice Evenson. Therefore, the trial court did not abuse its discretion when it admitted the notarized power of attorney.

**{¶33}** Next, Evenson argues that the trial court erred when it admitted "a multi-page document including the title to the motorcycle, and two powers of attorney, all of which were not notarized," into the evidence. He argues that "[n]one of those documents should have been admitted into evidence." But as indicated, the state withdrew the unnotarized documents. The trial court confirmed the state's withdrawal, and Evenson's counsel acknowledged that "[the state] withdrew No. 8." Because the unnotarized documents were not part of the evidence, this argument is

11

moot. *See In re C.E.,* 3d Dist. Marion Nos. 9-10-32, 9-10-33, 9-10-34, 9-10-35 and 9-10-36, 2010-Ohio-4410, ¶ 47.

**{¶34}** In sum, the trial court did not abuse its discretion when it reasonably found that Evenson suffered no prejudice from the admission of the unnotarized power of attorney. We overrule Evenson's second assignment of error.

### III. <u>Conclusion</u>

**{¶35}** We overrule Evenson's two assignments of error and affirm his convictions.

Judgment affirmed.

**CROUSE, P.J.,** and **ZAYAS, J.,** concur.

Please note:

    The court has recorded its entry on the date of the release of this opinion.