[Cite as *State v. Hooper*, 2013-Ohio-4898.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13CAC010006 |
| BRIAN HOOPER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Delaware Municipal Court,
Case No. 12-CRB-01796


JUDGMENT:                                   Reversed and Remanded


DATE OF JUDGMENT ENTRY:      October 28, 2013


APPEARANCES:


For Plaintiff-Appellee                        For Defendant-Appellant


JOSEPH E. SCHMANSKY                 WILLIAM T. CRAMER
70 North Union Street                       470 Olde Worthington Road, Suite 200
Delaware, Ohio  43015                       Westerville, Ohio 43082

*Hoffman, P.J.*

{¶1} Defendant-appellant Brian Hooper appeals his conviction and sentence entered by the Delaware Municipal Court.  Plaintiff-appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} On August 17, 2012, John Dennis, an employee of Sargent Enterprises, entered onto property owned by Liberty Castings, Inc., as a subcontractor, in order to haul away iron scrap and sand.  Upon entering the property, Dennis observed a blue Ford pickup truck on the property.  Dennis observed two individuals bending over, taking materials out of the scrap bin, and loading materials onto the truck.  Dennis attempted to stop the truck from leaving the property, but was unsuccessful.  Dennis testified he observed scrap iron in the back of the truck as the truck exited the Liberty Castings property.

{¶3} Dennis contacted the superintendent of Liberty Castings, who then contacted the police.  A police officer responded to the call. Dennis told the officer "ductile iron" was taken, a by-product of the casting process, estimated at approximately 750 pounds and worth about $900.

{¶4} The police officer contacted a local recycling center, Sims Recycling. Sims Recycling was familiar with the suspect vehicle, and provided a possible address. The officer found the vehicle at an apartment complex with some tools in the bed and a small amount of scrap metal. The driver of the vehicle was not present.

{¶5} Later the same day, the officer spotted the truck on the street and made an investigative stop.  There were two men in the car, Vernon Davis and Appellant.  At the time of the stop, the truck bed contained more pieces of scrap metal.  Appellant

admitted to the officer they had been scrapping the previous day, but did not remember going to Liberty Castings.

{¶6} During a search of the truck, the officer found a receipt from AZ Recycling in Columbus for 1,500 pounds of metal listed as "GL shreddable." Appellant was listed as the customer. AZ paid $153 for the metal. The receipt was dated August 17, 2012, at 3:29 p.m., and indicated the time-in as 2:55 p.m. The incident at issue herein was called into the police at 2:00p.m.

{¶7} Appellant was charged with theft, in violation of R.C. 2913.02(A)(1), and criminal trespass, in violation of R.C. 2911.21(A)(1). Appellant was found guilty of the charges, and sentenced to eighteen months of community control on both counts, including seven days in jail and a $100 fine on each charge.

{¶8} Appellant now appeals, assigning as error:

{¶9} "I. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 16, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTIONS.

{¶10} "II. THE JURY'S FINDINGS THAT APPELLANT WAS GUILTY OF THEFT AND TRESPASS WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶11} "III. APPELLANT WAS DEPRIVED OF HER RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO

CONSTITUTION, ARTICLE I, SECTION 10, BECAUSE DEFENSE COUNSEL MOVED TO EXCLUDE EVIDENCE THAT PROVED INNOCENCE ON THE THEFT COUNT."

I. & II.

**{¶12}** Appellant's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

**{¶13}** Appellant asserts his convictions for theft and criminal trespass are against the manifest weight and sufficiency of the evidence. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶14}** On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541, 1997–Ohio–52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717. We note "circumstantial evidence may be more certain, satisfying and

persuasive than direct evidence." *State v. Richey,* 64 Ohio St.3d 353, 595 N.E.2d 915, 1992–Ohio–44. It is to be given the same weight and deference as direct evidence. *Jenks,* supra.

{¶15} In the case sub judice, Appellant was convicted of theft, in violation of R.C. 2913.02(A)(1), which reads:

{¶16} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶17} "(1) Without the consent of the owner or person authorized to give consent;"

{¶18} Appellant was also convicted of criminal trespass, in violation of R.C. 2911.21(A)(1), which reads,

{¶19} "(A) No person, without privilege to do so, shall do any of the following:

{¶20} "(1) Knowingly enter or remain on the land or premises of another;"

{¶21} R.C. 2913.01(D) defines "owner" as,

{¶22} "(D) "Owner" means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful."

{¶23} Here, Appellant testified at trial he always attempted to gain the permission of the owner before scrapping metal. John Dennis testified he observed Appellant loading materials onto the truck. Dennis, as an employee of Sargent Enterprises, an authorized agent of Liberty Castings, testified he did not consent to the

removal of the scrap iron from the premises. Dennis testified he observed scrap iron in the back of the truck as Appellant exited the premises. Appellant did not introduce any additional evidence of consent on behalf of Liberty Castings. Viewing the evidence in a light most favorable to the State, one could infer Appellant did not have the consent of the owner to remove scrap iron from the premises. Therefore, we find there is sufficient evidence to support Appellant's conviction for theft.

{¶24} As to Appellant's conviction for criminal trespass, no one from Liberty Castings, the owner of the premises, testified Appellant did not have privilege or a right to enter onto the premises. There was no evidence introduced at trial indicating the public could not enter onto the premises. Rather, the testimony indicates there were no signs restricting access by the public. The business property appeared open to the public during normal business hours. Accordingly, we find Appellant's conviction for criminal trespass is not supported by the sufficiency of the evidence.

{¶25} The first and second assignments of error are sustained in part, and overruled in part.

III.

{¶26} In the third assignment of error, Appellant maintains his trial counsel was ineffective in objecting to the introduction of the receipt from AZ Recycling as evidence, as the receipt may well have exonerated him of the theft charge.

{¶27} In order to succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

**{¶28}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶29}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

**{¶30}** The following exchange occurred on the record relative to the introduction of the receipt at issue:

**{¶31}** "The Court: What's the statement on the receipt?

**{¶32}** "Mr. Reeder: They're going to try to show that he took this stuff down to the recycling place and that's the genesis of the charge. They constructed this whole thing working backwards and so it has huge significant [sic]. It's not a matter of independent - - it is the veritable smoking pistol and it is clearly hearsay and we object to it unless they have a foundational witness.

**{¶33}** "The Court: So the receipt purports to say, here's some cash for some scrap metal?

**{¶34}** "Mr. Krivoshey: That's right.

**{¶35}** "Mr. Reeder: They examined it and then from that they filed the complaint to match up the description in the weight.

**{¶36}** "Mr. Krivoshey: It's further proof of the theft offense.

**{¶37}** "By its very definition, a receipt is not hearsay, its by definition not hearsay, we don't need an exception to it, it is a fact of independent legal significance as if I was offering the terms of an insurance contract.

**{¶38}** "Mr. Reeder: No, no, no, not in a million years. I knew that was coming and you're not going to get away with that.

**{¶39}** "Mr. Krivoshey: It's definitely not hearsay, you'll see it's like an insurance company - -

**{¶40}** "Mr. Reeder: It's a business record, it's 8036, if you want to get it in, it's the only way.

**{¶41}** "The Court: Well, I'll allow him to testify about information on the receipt, I guess. He certainly can't say, you know, so and so did such and such but he can - -

**{¶42}** "Mr. Reeder: Please note my continuing objection.

**{¶43}** "The Court: I understand. Okay.

**{¶44}** "By Ms. Green:

**{¶45}** "Officer Zoller, if you could again direct your attention to the receipt.

**{¶46}** "A. Yes, ma'am.

**{¶47}** "Q. Could you state to the jury whose name is on that receipt?

**{¶48}** "A. Reading from the receipt, it says the customer is Hooper, Brian Edward, with an address of 184 and-a-half East Winter Street, Apartment B, Delaware, Ohio. Says the driver is Hooper comma Brian Edward.

**{¶49}** "Q. What is the receipt for, what is the entity that issued the receipt?

**{¶50}** "A. The receipt is from an AZ Recycling and it is for metal that had been sold to them. It says - - has a gross and a tear and the net is 1,500 pounds.

**{¶51}** "Mr. Reeder: Once again, Your Honor, I do object for the record. I think if the Court wants to allow the witness to identify it as a receipt, that's fine, but certainly not as to the substance and the contents blah that's on it.

**{¶52}** "The Court: I'll allow the testimony. Proceed.

**{¶53}** "By Ms. Green:

**{¶54}** "Q. Please state for the jury what the time is on the receipt?

**{¶55}** "Mr. Reeder: Objection.

**{¶56}** "The Court: Overruled.

**{¶57}** "The Witness: It says the receipt was printed on 8/17/2012 at 3:29 and 5 seconds p.m.

**{¶58}** "By Ms. Green:

**{¶59}** "Q. Does it also say on the receipt what time the driver arrived at AZ Recycling?

**{¶60}** "A. Time in was 8/17/2012 at 2:55 and 26 p.m.

**{¶61}** "Q. And just to reiterate, what time was the offense called in, the alleged theft at Liberty Castings?

**{¶62}** "Shortly after 2:00 on the 17th.

**{¶63}** "Q. And that was in Delaware, Ohio.  And is this in Delaware or Columbus, Ohio?

**{¶64}** "A. This is in Columbus, Ohio.

**{¶65}** "Q. About 50 minutes after you became aware of the possible theft?

**{¶66}** "A. Yes, give or take.

**{¶67}** "Q. What did you and Sergeant Wadsworth do with the receipt?

**{¶68}** "A. At that time she gave me the receipt and I brought it back to the station and entered it into property.

**{¶69}** "Q. What did you do next?

**{¶70}** "A. With regards - -

**{¶71}** "Q. The situation at large, not necessarily the receipt.

**{¶72}** "A. At that time, I did advise Mr. Davis and Mr. Hooper that I would be charging them with theft and trespass.  I did request that they follow me to the police department, which they agreed to do.  They came down and were issued their charges and released."

**{¶73}** Tr. at p. 88-92

**{¶74}** Subsequently during the trial herein, the trial court provided an instruction to the jury with regard to the receipt,

**{¶75}** "The Court: I did want to give you an instruction at this point about some testimony that we heard in the morning.

**{¶76}** "You heard testimony from Officer Zoller about having seen a receipt at a metal recycling business in Columbus.  And you may consider his testimony to the extent that he saw a receipt and then took certain actions after having seen that receipt.

**{¶77}** "But, the officer's testimony about the information on that receipt is not itself admissible and cannot be considered by you as proof that the information on the receipt was true.   And any information that Officer Zoller testified to about the information that he saw on the receipt, is not to be considered by you for any purpose."

**{¶78}** Tr. at 144.

**{¶79}** Prior to the introduction of the receipt, during cross-examination John Dennis testified to the difference between ductile iron and shreddable scrap,

**{¶80}** "Q. What is ductile iron?  You certainly would - -

**{¶81}** "A. Ductile iron?

**{¶82}** "Q. Yeah.

**{¶83}** "A. It's a form of cast iron, it's more of a - - is [sic] has more alloys, it makes it more harder than a gray iron.

**{¶84}** "Q. What's a gray iron?

**{¶85}** "A. Gray iron is just an iron that has less materials in it, it breaks easy. Gray iron is more of a harder, more harder cast iron.

**{¶86}** "Q. Are you familiar with a term GL shreddable, does that make any - - do you recognize that term.

**{¶87}** "A. Huh-uh.

**{¶88}** "Q. Do you know who A to Z Recycling is?

**{¶89}** "A. No, I do not.

**{¶90}** "Q. You don't - - okay.

**{¶91}** "If I were to say to you that GL shreddable is a term of art with their business, something to do with scrap iron, you wouldn't know what that is?

{¶92} "A. Not what they're talking about, no."

{¶93} Tr. at 67-68.

{¶94} Appellant later testified during the trial, but subsequent to the introduction of the receipt at issue,

{¶95} "Q. Are you familiar with the term scrap?

{¶96} "A. Yes, sir, I used to work in a scrap yard for several years in Canton, Ohio. I worked for two years at a scrap yard up there.

{¶97} "Q. What does the term scrapping refer to?

{¶98} "A. Well, you pick up various metals from people - - you get permission, usually get permission from people that you get various metals, gather them and take them to the scrap yard and you get cash out of them.

{¶99} "Q. Does it only involve items that are made out of metal?

{¶100} "A. Pretty much. You have got Number 1 copper, Number 2 copper, red brass, yellow brass, you have shreddable, non-shreddable. Shreddable is something that can go through a shredder in [sic] scrap yard.

{¶101} "As for the case over at General Castings, they have what you call ductile iron, which is big chunks of metal, which does not go through a shredder at a scrap yard. You can't even pick them up out of bin, they're huge and they're not even considered shreddable.

{¶102} "Then there's all kind of different other irons too, there's aluminum and cast.

{¶103} "Q. Ductile iron is not the same as GL shreddable?

{¶104} "A. No, it's not.

**{¶105}** "Q. Can you just give us an example of what GL shreddable is?

**{¶106}** "A. GL shreddable is an iron that can go through a shredder in a scrap yard.  They run it through a big shredder.  It has to be a thinner shreddable metal.

**{¶107}** "Q. Are you familiar with a business in the city of Columbus known as A to Z Recycling?

**{¶108}** "A. Yes, sir I am.  We went down there several times.  Me and my buddy scap at times and we go down there probably - - well, that particular time we're going down just about every day of the month, we get off work, meet, scrap during the day while I was working, and go down and cash in scrap.

**{¶109}** "Q. What timeframe are you talking about?

**{¶110}** "A. Well, they close at 4:30, so you have to be down there by 4:30 or you can't get into the scrap yard to cash your scrap.  So what we do is work during the day and go to legitimate businesses and usually get permission, we always try to get permission from somebody, if we can have the scrap, or whatever, around there.

**{¶111}** "And the particular day we were over at General Castings, we just drove in there and looked around and then we drove off and then all this happened.

**{¶112}** "Q. Now, you were present in the courtroom and you heard the testimony of the gentlemen from Sargent Enterprises, right?

**{¶113}** "A. Uh-huh.

**{¶114}** "Q. What's your recollection specifically as to what happened that day?

**{¶115}** "A. That particular day we pulled into the property and - - which we sometimes do from time to time, and then we actually go to the owner or somebody and

ask for permission if we can get scrap, we don't just take scrap from people because that's stealing.

{¶116} "Q. Anyways, that particular day we pulled in there because there's an open gate, there is no trespassing signs anywhere on the property - - so we just drove in and looked around. And this one truck pulled 200 yards away at the other end of the property and pulled sideways. And my buddy saw them so we just got in the truck and turned around and went up went back out the back, the other exit, which is another open gate. And a guy drove by us in a pick-up truck, and we had nothing in the back of the truck, we drove by him, he didn't see anything in the truck because there's nothing in the truck. And the other guy was 200 yards way at the other entrance blocking - - the guy that said he saw something in the truck was at the other end of the building 200 yards away, so I don't know how he could have saw something in the truck when there was nothing in the truck anyways."

{¶117} Tr. at 146-149.

{¶118} Upon review of the above quoted testimony, the distinction between types of scrap metals was raised prior to the introduction of the receipt at issue. Appellant later testified as to the difference in the metals. Based upon the testimony, we find there is a reasonable probability the introduction of the receipt indicating a different type of metal than that found at Liberty Castings could well have resulted in a different outcome at trial. While counsel for Appellant's objection to the statements on the receipt as being hearsay may have been proper based upon evidentiary rules, counsel should have recognized the exculpatory nature of those statements as they pertain to the type of scrap Appellant redeemed at AZ Recycling.

**{¶119}** Accordingly, we sustain Appellant's third assignment of error.

By: Hoffman, P.J.

Wise, J.  and

Delaney, J. concur

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE

_____

HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                    :
                                           :
-vs-                                       :                JUDGMENT ENTRY
                                           :
BRIAN HOOPER                               :
                                           :
    Defendant-Appellant                   :                Case No. 13CAC010006


For the reasons stated in our accompanying Opinion, Appellant's conviction in the Delaware Municipal Court are reversed and the matter remanded to the trial court for further proceedings in accordance with the law and our Opinion.  Costs waived.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. JOHN W. WISE


_____
HON. PATRICIA A. DELANEY